W. B. CLARKSON & CO. v. GANS S. S. LINE. (No. 7210.) *

(Court of Civil Appeals of Texas. Galveston. June 2, 1916. Rehearing Denied June 29, 1916.)

1. PLEADING ⬢�て214(1)—DEMURRER—EFFECT—ADMISSION OF ALLEGATIONS OF PETITION.

On general demurrer, the allegations of the petition must be regarded as true.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525, 529; Dec. Dig. ⬢➤214(1).]

2. CORPORATIONS ⬢➤426(1) — RIGHT TO CONTRACT IN ANOTHER NAME.

Where the contract has been partly performed, recognized, or ratified by a corporation for whom in fact it was made, suit may be brought by such corporation thereon, notwithstanding that the contract was made in a name other than the true name of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702; Dec. Dig. ⬢➤426(1).]

3. CORPORATIONS ⬢➤453—CONTRACTS EXECUTED BY CORPORATION UNDER A NAME OTHER THAN ITS CORPORATE NAME.

In the absence of statutory prohibition, a corporation may recover on a contract executed by it in a name other than its corporate name.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1798, 1799; Dec. Dig. ⬢➤453.]

4. SHIPPING ⬢➤108—CONTRACTS—VALIDITY—UNILATERAL CONTRACTS.

A shipping contract, binding the shipper to pay for space unused in a vessel by reason of the shipper's failure to furnish a cargo according to contract, held not unilateral, though drawn, since the maritime rules expressly included in contract made plaintiff liable for failure to furnish ships specified in contract.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 226, 404, 406–410; Dec. Dig. ⬢➤108.]

---

⬢➤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.

5. CORPORATIONS ⊜=648—FOREIGN CORPORA-
TIONS—PERMIT TO DO BUSINESS IN STATE—
INTERSTATE COMMERCE.

A statute, requiring foreign corporations to
secure a permit for doing business in the state,
*held* to have no application to a corporation en-
gaged in carrying on interstate commerce.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. § 2516; Dec. Dig. ⊜=648.]

6. COMMERCE ⊜=69 — REGULATION AND CON-
TROL—LICENSING—FOREIGN CORPORATION.

The state cannot control or regulate inter-
state commerce by requiring a foreign corpora-
tion engaged in such business to secure a permit
to do business within the state.

[Ed. Note.—For other cases, see Commerce,
Cent. Dig. §§ 100, 113–119; Dec. Dig. ⊜=69.]

7. SHIPPING ⊜=145—CONTRACTS—ACTIONS ON
—EVIDENCE—SUFFICIENCY.

Evidence *held* sufficient to support a judg-
ment for plaintiff, a corporation carrying on in-
terstate commerce, for damages consisting of the
rental of unused space in a vessel against a
shipper failing to furnish merchandise for ship-
ment pursuant to contract requirements.

[Ed. Note.—For other cases, see Shipping,
Cent. Dig. §§ 226, 502–505; Dec. Dig. ⊜=145.]

Appeal from District Court, Galveston
County; Robt. G. Street, Judge.

Action by the Gans Steamship Line against
W. B. Clarkson & Co. From a judgment for
plaintiff, defendants appeal. Affirmed.

W. F. Kelly and Geo. G. Clough, both of
Galveston, for appellants. Edw. F. Harris
and Harris & Harris, all of Galveston, for
appellee.

PLEASANTS, C. J. This suit was brought
by appellee against appellants to recover
damages for breach of contracts for the ship-
ment of cotton from Galveston to Havre,
France, and Bremen, Germany.

Plaintiff's petition, after alleging that it is
a corporation organized under the laws of
the state of New York and having its domi-
cile in said state, and that it was engaged in
the business of transporting merchandise in
ships owned and chartered by it between ports
in the United States and foreign countries,
and that its transportation business between
Galveston, Tex., and Havre, France, and Bre-
men, Germany, was carried on under the
name of Globe Line, sets out the cause of ac-
tion sued on as follows:

"On the 26th day of July, 1913, the plaintiff,
acting through S. Sgitcovich & Co., of Galveston,
Tex., steamship agents, and the defendants un-
der the name of W. B. Clarkson & Co., shipper,
entered into a written contract No. 38, whereby
the defendants engaged room for and bound
themselves to deliver, at Galveston, Tex., unto
the plaintiff, during the months of September,
October, and November, 1913, 1,500 bales of
standard compressed cotton; 500 bales thereof
to be so delivered during each of said months
to be transported per S. S. Globe line, or other
100 A–1 steamer, by plaintiff from Galveston,
Tex., to Havre, France; said cotton to be by
defendants delivered alongside the vessel or at
her loading berth in Galveston, not later than
the 25th day of each month stated; the de-
fendants to pay the plaintiff for such transporta-
tion at the rate of 54 cents per hundred pounds,
first-class basis, the defendants, shippers, paying
the wharfage. The said contract was, upon its

face, made subject to the rules of the maritime
committee of the Galveston Cotton Exchange
and Board of Trade, printed on the back of the
contracts, and made a part thereof, and upon the
express understanding that the contract was sub-
ject to all the clauses and conditions contained
in the ocean bill of lading used by the vessel,
which bill of lading and which rules were made
part of the contract. A substantial copy of said
contract is made a part hereof as Exhibit A.

"The third paragraph is in all things similar
to paragraph 2, except the contract is described
as No. 41, and is for 3,000 bales of cotton, desti-
nation Bremen, rate 50 cents per hundred
pounds; 1,000 bales to be delivered in each of
the months of September, October, and Novem-
ber, 1913.

"That one of the rules of said maritime com-
mittee, so made part of each of the above con-
tracts, was and is in the following language:
'The parties to this contract obligate themselves
to pay each to the other in cash at Galveston,
Texas, all costs and fines stipulated in these
rules, and all other damages proven under this
contract'—whereby the defendants obligated
themselves to pay the plaintiff in cash at Gal-
veston, Tex., all costs and fines stipulated in
said rules, and all other damages proven under
the contract.

"That another of the rules of said maritime
committee, made a part of said contract above
set forth was, and is in the following language:
'If the goods are not shipped or delivered with-
in the period stipulated in this contract, the
ship agent at his option may cancel the same or
carry forward to a later position or steamer, or
re-engage at best rate obtainable, the shipper
paying any freight difference and demurrage in-
curred. If no other cargo of such nature as the
ship can carry can be secured in a similar posi-
tion, the shipper shall be responsible for dead
freight.'

"That the plaintiff, on its part bound itself by
said contracts to carry and transport with due
diligence said 3,000 bales of cotton from Gal-
veston to Bremen, and said 1,500 bales of cot-
ton from Galveston to Havre, France; and the
plaintiff fully performed its part of said con-
tracts, and was ready with its steamships at the
proper times and places so to transport with due
diligence; but the defendants, ignoring their
contracts, utterly failed to keep and perform the
same, and utterly failed and refused to deliver
any part of said 1,500 bales of cotton under con-
tract No. 38; and said defendants delivered to
plaintiff on said contract No. 41 the total amount
of 2,450 bales of cotton only, leaving 550 bales
undelivered on said contract—all to the damage
of the plaintiff in the sum of $3,500."

"That on or about the 15th day of October,
1913, the defendants in writing notified plaintiff,
through said S. Sgitcovich & Co., that the de-
fendants were then unable to ship any cotton to
Havre, and asked the plaintiff to transfer the
engagement of the 1,500 bales of cotton called
for by contract No. 38, above pleaded, from
Havre destination to Bremen destination, at the
price of 50 cents per hundred pounds, transpor-
tation to be paid to the plaintiff by the defend-
ants; and, to wit, on the 17th day of October,
1913, plaintiff in writing notified defendants that
it granted said request, and then and there the
plaintiff declared the steamship Bjornstjerne
Bjornsen to lift said engagement of cotton, and
notified defendants thereof, and that said vessel
was due to arrive in Galveston about the 4th
or 5th day of November, 1913, and due to sail
from Galveston about the 8th day of November,
1913, and notified the defendants to send on to
Galveston the cotton aforesaid; that on or about
the 20th day of October, 1913, the defendants in
writing thanked the plaintiff, through said S.
Sgitcovich & Co., for transferring defendants'
Havre engagement to destination Bremen at
said 50 cents per hundred pounds, and promised

⊜=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to get as much cotton down to said vessel as possible; and thereafter from time to time, by written correspondence which passed between the plaintiff, through said S. Sgitcovich & Co., and the defendants, and by the occasional shipment on account of contract No. 41 of cotton in fulfillment of said contract by the defendants to the plaintiff, the time of delivery of all the cotton remaining due and unshipped by defendants to the plaintiff, was extended continuously up to and until the month of March, 1914, when the defendants, on or about the 5th day of said month of March, 1914, wrote the plaintiff through said S. Sgitcovich & Co., that defendants did not see any chance to ship the balance of cotton due on said contracts, and thereupon S. Sgitcovich, for plaintiff, in writing, notified defendants by letter dated the 18th day of March, 1914, that plaintiff had instructed said S. Sgitcovich to relet for account of the defendants, and the plaintiff rendered bills to defendants, showing such reletting and the price thereof, and demanded payment of defendants in the sum of $2,557.25 due plaintiff on default and breach by the defendants of said contracts Nos. 38 and 41, which bills the defendants then failed and refused to pay, and have since failed and refused to pay, to the damage of the plaintiff in said sum of $3,500."

The defendants, by their third amended original answer, excepted generally to plaintiff's second amended original petition, and excepted specially for the following reasons: (1) Because it appeared that plaintiff was a foreign corporation doing and soliciting business and maintaining an office in Texas, there being no allegation that it had a permit; (2) because it appeared from the pleadings and exhibits attached thereto that plaintiff, a foreign corporation, was transacting business in Texas, generally and especially in the transaction sued upon, in another and a different name from its corporate name; (3) because it appeared that the transaction sued upon was between defendants and the Globe Line, and there is nothing in the instruments sued upon attached to the petition to show or indicate that plaintiff had any interest in or connection with the transaction; (4) because it appeared from the petition and exhibits that plaintiff, if it be identified with the contract, had the option of canceling at any time after September 25, 1913; therefore the contracts were unilateral and unenforceable against plaintiff and void for want of mutuality; (5) because no proper measure of damage was alleged.

The defendants further answered by general denial, and further admitted the execution of the instruments sued upon, and specially pleaded a part of rule 3 of the Rules of the Maritime Committee of the Galveston Cotton Exchange, printed on the back of the instruments and made part thereof as follows:

"If the goods are not shipped or delivered within the period stipulated in this contract, the ship agent at his option may cancel the same or carry forward to a later position or steamer, or re-engage at the best rate obtainable, the shipper paying any freight difference and demurrage incurred. If no other cargo of such nature as the ship can carry can be secured in a similar position the shipper shall be responsible for dead freight."

And, further, that on account of unprecedented rainfall in 1913, the defendants were unable to deliver the cotton, whereupon the contract was breached, and that, under the terms of said contracts and rule No. 3 thereof, it became the duty, and plaintiff was required, to immediately elect which of the options it would exercise; that plaintiff failed to exercise either of said options, but simply postponed the day of accounting; then, the option to cancel being always open to it, the contract was unilateral and void for want of mutuality.

Defendants further denied that the contracts sued upon were for or in behalf of plaintiff, and that it was engaged in business under the name of the "Globe Line," or was authorized to transact its business, and further denied that plaintiff was bound or obligated by such contracts or damaged by the breach thereof. They also pleaded in reconvention for the sum of $349.36.

The trial court overruled the general demurrer and all special exceptions, to which appellant excepted.

By supplemental petition plaintiff denied that it had exercised the option to carry said contracts forward to later position or steamer denied that "Globe Line" was a trade-name of S. Sgitcovich & Co., and denied that the identity and connection of plaintiff with the contracts was not disclosed, and alleged that the plaintiff had been doing business out of Galveston as the Globe Line for the past seven years, and notoriously advertised as such in the public press of Galveston; alleged the making of many contracts with the defendants, through Beno Sproule, broker, by such name, prior to the contracts sued upon.

The cause was tried with a jury upon the following special issues:

First. Were S. Sgitcovich & Co. authorized by the Gans Steamship Line, a corporation, to use the name of the "Globe Line" in making contracts for freight shipments on vessels owned or controlled by the Gans Steamship Line at the port of Galveston?

Second. Did S. Sgitcovich & Co. make the contracts sued upon for and on behalf of the Gans Steamship Line?

The jury answered both of these questions in the affirmative, and upon the return of such verdict judgment was rendered in favor of plaintiff for the difference between the amount of charges received by plaintiff for the substituted cotton and the amount agreed to be paid by defendants for the cotton contracted to be shipped by them, less the offset on counterclaim of $349.36 pleaded by defendants, the net amount of the judgment being $2,384.52.

The findings of the jury are amply sustained by the evidence. The contract for shipment of the 1,500 bales to Havre is evidenced by the following instrument:

"S. Sgitcovich & Co., Steamship Agents. Cable Address, 'Stephen.' Globe Line to Bre-

men. Pinillos Line to Barcelona. Contract No. 38. Engagement Note. Adopted by the Maritime Committee of the Galveston Exchange and Board of Trade, June 16, 1913. Galveston, Texas, 26th July, 1913. Messrs. W. B. Clarkson & Co.: We beg to confirm your engagement of room for: 1,500 Bales of Standard Compressed Cotton from Galveston to Havre at rate of 54 cents per 100 pounds first-class basis shippers paying wharfage per S. S. Globe Line or other 100 A-1 steamer.

To be shipped from ———— on or before

To be delivered alongside the vessel, or at her loading berth, not later than } As below

"Steamer has option of calling at other port or ports in any order to load and/or discharge coals and/or other cargo and/or passengers.

"It is understood and agreed that this contract is made subject to the Rules of the Maritime Committee of the Galveston Cotton Exchange and Board of Trade, extracts from which are printed on the back, and all of which are made a part hereof, and on the express understanding that it is subject to all clauses and conditions contained in the ocean bill of lading used by the vessel, which bill of lading and which rules are made part of this contract, copies of which will be furnished on application.

"This contract shall not be relet or transferred without consent of the steamship agent.

"500 bales September sailing dely. 25th Sept.
"500 　"　 October 　"　 　"　 25th Oct.
"500 　"　 November 　"　 　"　 25th Nov.

"Signed in duplicate.
　　　　"S. Sgitcovich, Steamship Agent,
　　　　　　　　　　"Per J. S. Grinyer.
"Approved and accepted.
　　　"W. B. Clarkson & Co., Shipper.
　　　"B. Sproule & Co., Broker."

On the back of this instrument are the printed rules of the maritime committee of the Galveston Cotton Exchange and Board of Trade referred to in the contract. These rules contain the following provisions:

"The parties to this contract obligate themselves to pay each to the other in cash at Galveston, Texas, all costs and fines stipulated in these rules, and all other damages proven under this contract."

"If the goods are not shipped or delivered within the period stipulated in this contract, the ship agent at his option, may cancel the same or carry forward to a later position or steamer, or re-engage at best rate obtainable, the shipper paying any freight difference and demurrage incurred. If no other cargo of such nature as the ship can carry can be secured in a similar position, the shipper shall be responsible for dead freight."

The other contract sued on (No. 41) was in all respects identical with the contract above set out except that it covered 3,000 bales of cotton to be transported from Galveston to Bremen at a rate of 50 cents per 100 pounds, 1,000 bales to be shipped in each of the months of September, October, and November, 1913.

The evidence shows without contradiction that the defendants, as alleged in the petition, failed to deliver the cotton for shipment in accordance with the terms of the contract, and that from time to time plaintiff notified defendants of the arrival of its ships, and requested that the cotton be furnished it in accordance with the contract. Defendants wrote a number of letters to plaintiff's agent during the time between September, 1913, and March, 1914, explaining and regretting their delay in shipping the full number of bales called for by the contract, requesting leniency in the matter, and stating that they were doing all in their power to get the cotton. The evidence conclusively shows that the time for delivery of the full amount of the cotton was postponed from one sailing to another, after the dates specified in the contract, for the benefit and accommodation of the defendants. On March 5, 1914, defendants wrote plaintiff's agent that they did not see any chance to ship the balance due upon the contract, and must defer the matter until a later time, and that they would communicate with him as soon as they could attract additional business. On March 18, 1914, Sgitcovich, plaintiff's agent, advised defendants that he had been instructed by his principal to relet space for account of defendants, and inclosed statement showing difference between the contract price and the amount for which the space was relet and demanded payment. The undisputed evidence shows that the amount shown in this statement and for which this suit was brought, $2,557.25, was the amount of loss sustained by plaintiff by reason of the failure of defendants to comply with their contract.

It would serve no useful purpose to discuss in detail the various assignments of error presented in appellants' brief, all of which have had our full consideration. We will only discuss what we regard as the material questions raised by the appeal.

The first contention is that the court erred in not sustaining the general demurrer to the petition. The grounds of this contention are that the petition fails to allege a cause of action because there is nothing in the written contracts sued on to indicate that plaintiff was "interested therein, connected therewith, or charged with or responsible for the obligations assumed thereby," and because it does not appear from the contracts that there was any mutuality in the contracts, and they should be held void for want of mutuality. We do not think the trial court erred in holding that the petition sufficiently stated a cause of action in favor of plaintiff against the defendants. It is true the contracts which were attached to the petition as exhibits do not contain the name of the Gans Steamship Line, and calls the steamship line over which the shipments were to be made the Globe Line, but the petition contains the following allegations:

"That the plaintiff is a corporation organized and existing under the laws of the state of New York, having its home office in the city and state of New York, and is engaged now, and was engaged at the time of the transactions hereinafter set forth, in interstate commerce, and in the transportation of merchandise upon ships owned, chartered, or controlled by the plaintiff from ports of the United States to European and other foreign ports, and was at the time herein

set forth engaged in sailing various cargo or freight ships under the name of the Globe Line, from Galveston, Tex., to Bremen, Germany, and Havre, France, and the contracts hereinafter set forth made and entered under the name of Globe Line were made and entered into by the plaintiff under said name, and said contracts were made for and in behalf of the plaintiff herein in the language hereinafter set forth, and to the extent hereinafter set forth the duties imposed by said contracts upon the Globe Line were duties imposed upon this plaintiff, and were by this plaintiff duly carried into effect and performed by the plaintiff to the full extent permitted by the defendant herein."

[1, 2] These allegations being true, and as against a general demurrer they must be so regarded, the fact that the contracts were made in the name of the Globe Line is immaterial. The plaintiff having authorized the execution of the contracts and recognized and adopted them after their execution, they became plaintiff's contracts, and it was bound thereby. When a contract has been partly performed, recognized, or ratified by a corporation for whom the contract was in fact made, suit may be brought by the corporation on such contract, notwithstanding there is nothing on the face of the contract to connect the corporation therewith. It seems to be well settled that a corporation may have more than one name. In addition to the name given it by its charter it may acquire other names by user or reputation. In Clark & Marshall on Corporations, page 152, cited by appellants it is said:

"It has been said that when a certain name is given to a corporation by its charter and adopted, the corporation can, in general, act by no other name. This, however, is not true unless there is a statutory provision to such effect. A corporation may have more than one name. It may have one name in which to contract, etc., and another in which to sue and be sued. It may thus acquire several names, either by express provision of the statute creating it, or by user and reputation."

In Ency. Law, vol. 7, p. 688, it is said:

"It has long been settled that it is not necessary, in order that a corporation may be bound by its contracts, that the contract shall be made in its exact corporate name. If it appears from the allegations and proof that the obligation sued upon is intended to be the obligation of the corporation sued, a recovery will not be defeated by reason of a misnomer alone."

See Melledge v. Boston Iron Co., 5 Cush. (Mass.) 158, 51 Am. Dec. 59. The text further says the general rule is that a misnomer of a corporation has the same effect as the misnomer of an individual, and when the true name is to be collected from the instrument involved, or is shown by proper averments, the contract is not invalidated thereby.

[3] There is no statute in this state which requires a corporation to contract in the name given it by its charter and, in the absence of such statute, we cannot hold that a contract executed by a corporation in a name other than that given it by its charter is not binding on the corporation.

[4] The contracts pleaded by plaintiff are not unilateral. The instrument is not prepared with technical skill, but is a sufficient memorandum of the agreement of the parties to constitute a valid contract. It confirms an engagement by defendants of space in ships to be furnished by plaintiff, and gives the dates of the sailings of the ships. This binds the plaintiff to furnish the ships on the dates stated, and one of the maritime rules which is made a part of the contract provides that the parties to the contract shall pay each to the other all damages proven under the contract. We do not think it can be doubted that under these contracts plaintiff would have been liable for any damages that defendants might have sustained by the failure of plaintiff to furnish the ships as specified in the contracts, or to receive the cotton when offered under the contracts.

[5, 6] The second assignment of error complains of refusal of the court to sustain defendants' special exception to the petition, on the ground that it appears from the petition that plaintiff is a foreign corporation, and there is no allegation that it had obtained a permit to do business in this state. The exception was properly overruled. Our statute requiring foreign corporations doing business in this state to secure a permit has no application to interstate or foreign commerce, and we think it clear that plaintiff was not required to obtain a permit to conduct its business of carrying merchandise from ports of this state to foreign ports. Such business is essentially foreign commerce, and is beyond control or regulation by this state.

None of the other special exceptions of the petition which we have before set out should have been sustained, and the several assignments complaining of the ruling of the court on the exceptions are overruled without discussion.

[7] Our findings of fact before set out dispose of the assignments complaining of the insufficiency of the evidence to support the verdict and judgment. In our opinion the evidence upon every material issue in the case authorized, if it did not require, a judgment in favor of plaintiff.

The remaining assignments present no material question, and each of them is overruled without discussion.

It follows from the conclusions above expressed that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.